Bennet Zurofsky  (BZ 2005)
Reitman Parsonnet, P.C.
744 Broad Street
Suite 1807
Newark, NJ  07102
(973) 642-0885

Joshua Friedman  (JF 2176)
25 Senate Place
Larchmont, NY 10538
(212) 308-4338

United States District Court
District of New Jersey
---------------------------------------------x
Edward Lee, Sr., and Leeanne Lee
on behalf of their minor son
E.L.,                                                            COMPLAINT AND JURY DEMAND

        Plaintiffs,

    -against-

Lenape Valley Regional Board of
Education,

and

Douglas deMarrais, sued in his
official and personal capacity,

        Defendants
---------------------------------------------x

        Edward Lee, Sr., and Leeanne Lee on behalf of their minor son E.L.

(hereinafter "E.L." or "Plaintiff") by their attorneys Bennet Zurofsky and Joshua

Friedman, complain as follows:

## Jurisdiction

1. This is a student-on-student racial harassment and race discrimination case, brought pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), 42 U.S.C. § 1983, the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD"), and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. ("NJCRA").

2. This Court has jurisdiction pursuant to 28 USCS § 1343. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to the general venue statute, 28 U.S.C. §1391.

## Parties

3. Edward and Leeanne Lee are the parents of E.L., a minor. E.L. is a 16 year-old African-American boy, who at all times relevant herein was a student within the Lenape Valley Regional School District (the "District"), and was a student at the Lenape Valley Regional High School (hereinafter "LVRHS" or the "School").

4. Plaintiff is a resident of Sussex County, New Jersey, in which the District is located.

5. Defendant Lenape Valley Regional Board of Education (hereinafter "Defendant" or the "BOE") receives federal financial assistance from the United States Department of Education, and operates LVRHS, a public high school,

within the District.

6. Defendant Douglas deMarrais, who is sued in his official and personal capacity, was at all relevant times herein Principal at LVRHS.

## Facts

7. LVRHS is a public high school attended by 1970 students. Of that number, approximately 13, or less than one percent, are African-American.

8. In August 2004, Defendant promulgated policies to address complaints of harassment and bullying, which were distributed to LVRHS.

9. Specifically, Policy 5131 and 5131.1 (hereinafter the "Policies") (annexed hereto as Exhibit "A") define harassment, which includes race-based harassment, identify the principal of each school as the designated individual for receiving and investigating complaints of race harassment, and compel all school employees to report violations of the Policies.

10. The Policies require the principal to maintain a record of all complaints, which are to be preserved in a confidential file.

11. In addition, the principal is required to conduct a "prompt, thorough and complete investigation," which specifically includes interviewing witnesses where appropriate, and to determine whether a violation has occurred within 10 days of the complaint. The principal is to issue a summary of findings to the parties involved.

12. Where complaints are substantiated, the principal is required to take reasonable, effective corrective action, and where necessary, provide services to the victim to address the impact of the harassing behavior.

13. Throughout the period November 2004 through February 2006, and as set forth more fully herein, plaintiff E.L. was subjected to an ongoing pattern of racial harassment by students at the LVRHS, of which defendant was fully aware but deliberately indifferent to, resulting in substantial harm to plaintiff. Defendant repeatedly failed to follow the Policies. Moreover, defendant disciplined plaintiff in a disparate and more severe manner than his Caucasian counterparts who engaged in similar behavior.

14. Specifically, but not by way of limitation:

a. In November 2004, E.L. and his family moved within the Newton School District in Sussex County to Byram Township, in which LVRHS is located.

b. Although Superintendent Pallick for two weeks refused to allow E.L. to begin at LVRHS, in or around late November, E.L. began 9th grade.

c. Shortly after beginning at LVRHS, in or about December 2004, a 10th grade student on the school bus called E.L. "nigger."

d. E.L. reported this comment to his mother, who, the following day, called LVRHS. She spoke with Lori Lubieski, Assistant Principal at LVRHS. Ms. Lubieski informed Mrs. Lee that she would "take care of it."

e. Despite Ms. Lubieski's promise, no one from the District ever contacted the Lees about the incident.

f. Soon after, in late December 2004/early January 2005, another student, S.C. (Caucasian), called E.L. "nigger" while riding the school bus.

  g. Once again, Mrs. Lee reported incident the next day to Ms. Lubieski, who said she would take care of it.  Mrs. Lee also reported the incident to the Principal, Mr. DeMarrais.

  h. The Lees never heard back from Ms. Lubieski or Mr. DeMarrais.

  i. Upon information and belief, defendant did not make a written record of this incident, and took no remedial action in response to this incident.

  j. In or around the same time period, E.L. was playing on the Freshman basketball team.  During a game at which Mr. and Mrs. Lee were in attendance, the team's captain, P.W. (Caucasian), called E.L. "nigger."

  k. Mrs. Lee immediately reported the remarks to the coach of the team, Mr. Garillo, who told Mrs. Lee that he would have to check with the Varsity coach before taking any action.

  l. Subsequently, P.W. was removed from being the captain, was suspended for one game and wrote a letter of apology.

  m. Despite disciplining P.W., and contrary to Defendant's written policy, Coach Garillo never reported the incident to the LVRHS's Principal.  Ms. Lubieski subsequently admitted that Coach Garillo should have reported the incident when it occurred.  Defendant also failed to make a written record of Plaintiff's complaint.

n. Soon after the basketball incident, in or around January/February 2005, V. LNU ("V.") (Caucasian), referred to E.L. as "nigger" several times while riding the school bus.

o. Again, Mrs. Lee reported it to Ms. Lubieski and to Principal DeMarrais. Lubieski informed the Lees she would take care of it, but in fact, she only asked V. whether or not V. had called E.L. "nigger," and when V. denied it, took no further action.

p. Despite Mrs. Lee's request to the Principal that he interview the other student/witnesses on the bus, specifically delineated in the Policies as an appropriate form of investigative technique, deMarrais stated that he could not interview everyone and that the issue was one of "he said, she said." Defendant also failed to make a written record of Plaintiff's complaint.

q. Also during the 2004-2005 school year, several (unknown) girls (all Caucasian) called E.L. "Alabama porch monkey." When Mrs. Lee reported the comment to Ms. Lubieski, once again she was told that Ms. Lubieski would "take care of it."

r. Despite Ms. Lubieski's representation, Mrs. Lee never heard back from Ms. Lubieski or any one else at the school.

s. At the start of the following school year, on or about September 9, 2005, S.C. again harassed E.L., telling E.L. that he was trying to be "ghetto" and "gangster." S.C.'s racist comments resulted in S.C. and E.L. fighting. Even though S.C.'s harassment was reported to defendant, S.C. received no discipline.

  t. On or about September 20, 2005, D. LNU ("D.") (Caucasian), told E.L. that E.L. was going to be picking his cotton. E.L. again reported the incident to Ms. Lubieski. At the time of E.L.'s report, Plaintiff did not know D.'s name. Instead of investigating, Lubieski put the onus on E.L. to determine D.'s identity by looking in a class face book, which he did. Even after Plaintiff identified D., no remedial action was taken, and Defendant failed to make a written record of Plaintiff's complaint.

  u. The following week, on September 26, 2005, D. called E.L. "nigger" while in study hall, which E.L. reported to Ms. Lubieski. Even after D.'s involvement in two serious incidents of racial harassment, D. was given only an administrative detention (in school detention), and was permitted to return to E.L.'s study hall the following day.

  v. The next day, on September 27, 2005, V. again called E.L. "nigger" three times while riding the school bus.

  w. Mrs. Lee called Principal deMarrais that afternoon, warning him that she would expose in the media, and seek legal help concerning, defendant's utter failure to take seriously the racial harassment of her son.

  x. DeMarrais hurriedly called a meeting with Mrs. Lee, Ms. Lubieski and D. Mrs. Lee told deMarrais that the situation would not have escalated had he done something to address the racism when she reported it the prior year. DeMarrais responded that he would "take the blame for last year," and stated that D. and V. would be suspended because of the prior and current years' incidents.

    y. Only as a result of Mrs. Lee's stated intention to publicize defendant's failure to take action in response to her complaints of racial harassment, D. was suspended for four days, and V. for five.

    z. Approximately one week later, on or about October 4, 2005, Mrs. Lee spoke with Ms. Answorth, Case Manager for the LVRHS's Child Study Team.  Having been classified as learning disabled, E.L. had a federally-mandated Individualized Education Plan ("IEP"), which is reviewed at least triennially.  During the meeting, Mrs. Lee reviewed with Answorth the racially hostile environment E.L. had been subjected to.  Ms. Answorth claimed to have been unaware up until that point of any racism directed toward E.L.

    aa. The same day, Mrs. Lee met with Principal deMarrais, and told him she wanted E.L returned to his old school.  Ms. Answorth, who was present at the meeting, suggested instead that E.L. be removed from the mainstream classes and placed in a self-contained classroom setting, so that he would not have to see as often the students who persisted in racially harassing him.  Mrs. Lee refused to agree to a plan that essentially would punish E.L. for other students' conduct and for defendant's unwillingness to take effective corrective action.

    bb. In the meeting, Ms. Answorth confirmed she had never been contacted regarding any issues that pertained to E.L. and the race issues, although she stated that she should have been.

    cc. Ms. Lubieski also admitted that the School had failed to follow the basic requirements of the Policies, including that records be kept of

complaints and that parents be contacted when incidents occurred.  In fact, no records at all had been kept of the incidents of racial harassment that were reported to her by E.L and/or his parents, and no one from the school ever contacted the Lees.

        dd.    Just one day after Mrs. Lee's meeting with the Principal, E.L. informed his mother on October 5, 2005, that his seat on the school bus had been moved to the front.  When Mrs. Lee telephoned Ms. Lubieski, she was told that E.L.'s seat was moved because of S.C. and V.'s ongoing harassment of E.L.  Prior to the change, E.L., S.C. and V. all sat in the back of the bus.

        ee.    On October 11, 2005, Mr. DeMarrais explained that the children were being seated in the order they got off the bus.

        ff.    Sean got off the bus before E.L. and Vicki, and should have been the one moved to the front.  When confronted about the fact that deMarrais' solution to V. and S.C.'s harassment was to move the victim rather than the harassers, Mr. DeMarrais stated he would have to see whether Vicki was "comfortable" sitting near E.L., even though Vicki had harassed E.L., not the other way around.

        gg.    Ultimately, E.L was told he could sit where he liked on the bus.

15.    Even after being notified on multiple occasions of the problem among its student body with anti-African-American racism, Defendant failed to take appropriate remedial action.

16. As a result, for example, in or about January 2006, J. LNU referred to E.L. as "nigger" in the lunch room, and an altercation between E.L. and J. ensued. While both students were suspended for five days, only E.L. was prevented from returning to LVRHS.

17. A short time after the incident with Josh, in February 2006, E.L. received at least one telephone call from J.'s brother, D., in which E.L. was repeatedly called "nigger," and in which J.'s brother tried to induce E.L. to fight him.

18. Because Defendant failed to effectively end the racial harassment directed at E.L., in or about February 2006, Mrs. Lee wrote to the District requesting that E.L.'s placement be changed to return E.L. to his former school, in the Newton School District.

19. Rather than provide this assistance, Principal deMarrais effectively expelled E.L. from school on February 7, 2006, without providing any hearing or other process, telling Mr. and Mrs. Lee that he was not permitted back at the school.

20. Not only did Defendant de facto expel E.L., but instead of giving any assistance in placing E.L. back at his former school, at which he had had no significant behavior problems, Defendant inhibited the transfer by telling the Newton School District that E.L. was a problem student with behavior issues.

21. Additionally, E.L. was not provided with alternative instruction for two weeks. As a consequence of his expulsion and lack of instruction, E.L. was

made to feel like a pariah, unworthy of being educated, and lost two weeks of schooling.

22. On February 21, 2006, Defendant began providing home tutoring, which is not an adequate substitute for a scholastic education. This further stigmatized Plaintiff and made him feel that he was too stupid and disabled to attend school, and created a further impediment to academic progress.

23. On March 1, 2006, instead of assisting E.L. in returning to his former school as his parents requested, Defendant required that Plaintiff attend Lakeland Andover ("Lakeland"), a school for children with behavior problems. Lakeland teaches at a much lower academic level than E.L. is capable of functioning. E.L. has found himself learning less than he did at his previous school, and at a slower pace.

24. Prior to when Defendant began to ignore his complaints of racial harassment, E.L. did not have serious behavioral problems.

25. Defendant's illegal conduct caused or exacerbated E.L.'s behavioral and emotional problems.

26. If it is necessary to educate E.L. in a separate facility, with the attendant loss of educational opportunities, it is a consequence of defendant's illegal conduct.

27. On February 13, 2006, Mrs. Lee filed a complaint with the U.S. Department of Education's Office of Civil Rights ("OCR") with regard to the racial harassment at school and the school's lack of action. The OCR elected to investigate the charge, which is pending.

28. Defendants' refusal to take action to remediate the racially hostile environment resulted in significant damages. For example, but not by way of limitation:

    a. In November 2005, E.L. was placed in a self-contained class.

    b. Prior to transferring to LVRHS, E.L.'s consistently achieved average marks. After enduring racial harassment, and complaining about it without result, E.L. began receiving failing grades.

    c. Prior to transferring to LVRHS and being subjected to a racially hostile environment, and in fact, since first grade, E.L. had been classified as a learning disabled student, but had never been, nor had he ever been classified as, a student with behavior problems. According to his October 2005 Individualized Education Plan ("IEP"), after enduring nearly two years of unremedied racial harassment, E.L. was reclassified as a behaviorally and emotionally disabled student. Both his October and December 2005 IEPs acknowledge that racism have played a significant role for E.L. at LVRHS, implicitly linking the racist environment to changes to his behavior. His IEP's state:

> Mr. and Mrs. Lee report changes in [E.L.'s] behavior since his suspension in 09/05. Parents have been upset with last year's reported incidents of racism. These incidents were not resolved to the parents' satisfaction. Mr. and Mrs. Lee report that [E.L.] has significant emotional issues as a result of these incidents.
>
> [E.L.] has had a difficult time assimilating into the academic and social milieu of a different high school. He is particularly sensitive to racial

discrimination. [E.L.] has reported having difficulties managing appropriate behaviors in school, particularly due to his temper.

  d. The racially hostile environment at LVRHS and consequent damage caused E.L. to abuse alcohol, ultimately causing him to enroll in an outpatient alcohol abuse program.

  e. As a result of defendant's failure to take effective action to stop the harassment, the Lees decided to transfer E.L. to another school. However, E.L. was denied admission to Sussex County Vo Tech because of behavior, attendance and grade issues, which are all attributable to the racial harassment.

  f. As a result of the harassment and the fact that defendant never took any action to stop it, E.L. became very frustrated, angry and depressed. He has undergone counseling, and has been prescribed medication.

## COUNT I

### Hostile Environment in Violation of Title VI of the Civil Rights Act of 1964

29. Plaintiff incorporates paragraphs one (1) through twenty-eight (28) as if fully set forth herein at length.

30. Defendant Lenape Valley Regional School District receives financial assistance from the United States Department of Education.

31. Students at LVRHS harassed plaintiff on the basis of his race. Employee's of defendant with the power to stop it had actual notice of this racially hostile environment, and were deliberately indifferent to it.

32. This indifference was the proximate cause of plaintiff's injuries.

## COUNT II

### Hostile Environment in Violation of the New Jersey Law Against Discrimination -- NJSA 10:5-1 et seq.

33. Plaintiff incorporates paragraphs one (1) through thirty two (32) as if fully set forth herein at length.

34. LVRHS, operated by Defendant, is a place of public accommodation within the meaning of the New Jersey Law Against Discrimination.

35. Defendant denied E.L. the privileges and advantages of a public education because of race.

36. Plaintiff endured severe or pervasive harassment that created an intimidating, hostile, or offensive environment.

37. Defendant knew or should have known of the harassment and failed to take effective measures to end it, causing plaintiff's injuries.

### COUNT III v. Defendants LVRBOE and deMarrais
### 42 U.S.C. 1983

38. Plaintiff incorporates paragraphs one (1) through thirty-seven (37) as if fully set forth herein at length.

39. Defendants, acting under color of state law, deprived Plaintiff E.L. with reckless and/or callous indifference to federally protected rights, including but not limited to, rights secured by the 14th Amendment of the U.S. Constitution, as well as rights secured by 42 U.S.C. § 2000d et seq., and in so doing was motivated by evil intent.

40. Specifically, but without limitation, Defendants failed to provide Plaintiff with due process of law in expelling him without hearing or any process

whatsoever.  Defendants further deprived Plaintiff of the equal protection of the laws when Plaintiff was harassed by students at LVRHS, of which Defendants had actual notice, and deliberately failed to take effective measures to end the harassment and discrimination.

41.	Defendants' conduct proximately caused Plaintiffs' injuries.

### COUNT IV-  v. Defendants LVRBOE and deMarrais

### Violation of the New Jersey Civil Rights Law  – NJSA 10:6-1 et seq.

42.	Plaintiff incorporates paragraphs one (1) through forty one (41) as if fully set forth herein at length.

43.	Defendants, acting under color of law, deprived Plaintiff of substantive due process, and equal protection rights and privileges secured by the Constitution and laws of the United States, and of the laws of New Jersey, by allowing a racially hostile environment to foster at LVRHS, by failing to follow BOE Regulations, including but not limited to the Policies, by expelling E.L., and by treating him in a disparate and more severe manner in discipline than similarly situated Caucasian students.

44.	These deprivations were the proximate cause of Plaintiff's injuries.

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

A. Declare defendant's conduct complained of herein to be in violation of the plaintiff's rights as secured by 42 U.S.C. § 2000d , N.J.S.A. 10:5 et seq., and 10:6 et seq.;

B. Award the Plaintiff compensatory damages to be determined by the jury at the time of trial;

  C.  Award the Plaintiff punitive damages to be determined by the jury at the time of trial; and

  D.  Award a civil penalty pursuant to N.J.S.A. 10:6-2(e);

  E.  Award the Plaintiff's reasonable attorneys' fees and costs, including the fees and costs of experts, incurred in prosecuting this action; and

  F.  Grant such further relief as the Court deems necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all questions of fact raised by the Complaint.

Dated:  9/26/06

        By:  /s/ Bennet D. Zurofsky

          Bennet Zurofsky  (BZ 2005)
          /s/ Joshua Friedman

          Joshua Friedman  (JF 2176)